RUSSELL COTTRELL V. STATE OF NEBRASKA.

FILED DECEMBER 23, 1920.     No. 21731.

1. Evidence examined, and *held* to sustain the verdict.

2. Criminal Law: EXHIBITS. When articles are introduced in evidence as exhibits, it is essential to their consideration by a reviewing court that they be properly identified as forming part of the evidence in the case.

3. ———: ———. When such objects are introduced in evidence, they are thereby placed in the custody of the court, and should not, without leave of court, be taken from the custody of the official court reporter. The county authorities should provide that officer with a safe place in which to keep such exhibits under his sole control.

ERROR to the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*Myers & Meecham,* for plaintiff in error.

*Clarence A. Davis, Attorney General,* and *J. B. Barnes,* contra.

LETTON, J.

Plaintiff in error was convicted of murder in the first degree. The penalty imposed was life imprisonment. From this conviction he prosecutes error.

The trial was had upon an information charging him jointly with Willard Carroll, and both were convicted. The undisputed facts show that the accused and Carroll,

both young colored men, hurriedly entered the premises in Omaha, where the deceased conducted a grocery store and meat market, about 8:30 or 9 o'clock in the evening. Carroll had a pistol in his hand. At that time Jake Rosenthal, the son, and Bessie Rosenthal, daughter-in-law of the deceased, were in the store. The deceased had just entered from the east, and was standing near the stove facing west, the daughter-in-law was standing near the counter northwest of him, while the son and the clerk were to the south, or a little to the southeast, of where the deceased stood when the fatal shot was fired. Mrs. Rosenthal testifies that when the men came into the store Carroll had a gun in his hand. One of them said, "Don't move," and said to the other man, "Get the cash." Cottrell started toward the cash register, she heard a shot, but cannot say who fired it, and screamed to her husband to "get the gun." Deceased fell to the floor, falling westward. Her husband did not fire until after his father had fallen, and she had shouted to him to get the gun. After that the colored men ran, and, as they ran out of the door, Carroll turned and shot.

The medical testimony shows that a bullet had entered the left ear of the deceased, ranging upwards, penetrated the temporal bone, and lodged back of the left eye. Certain police officers testified to arresting both of the accused, and to the finding of Cottrell's gun, recently discharged, in the bottom of a trunk in his room, and of a number of recently discharged cartridge shells in the back yard of the premises where Cottrell lived, where they had been thrown by a woman with whom he lived.

Neither of the accused testified. All we know of their version of the affair is the testimony of certain police officers as to statements and admissions they made after arrest. The pistol used by Jake Rosenthal was not introduced in evidence. The pistol taken from Cottrell was admitted, but it is not with the record. Three bullets were introduced in evidence. One of these, exhibit 6, is the bullet taken from the skull of the deceased, identified by Dr.

McCleneghan, and said by him to be "in his judgment" 32-caliber. This is the only testimony as to the caliber of the bullets. Another is exhibit 7, which was dug out from the woodwork of the north counter by Mr. Dunn, and appears to be of the same caliber. Both of these bullets are identified. The record shows that another bullet, exhibit 14, was in evidence, but no bullet so identified is here. Several bullets and empty cartridge shells, two of the bullets of a larger size than the others, have been sent here since the case was submitted, but none of these is properly identified or shown to have been received in evidence.

Counsel who presented the case in this court was not present at the trial. The exhibits were not retained by the court reporter, but counsel for the accused has procured them from the county attorney's office since the argument in this court. It was said that the reason for this unsatisfactory condition of the record is that it is the custom in Douglas county for exhibits in criminal cases to be retained by the county attorney. Such exhibits in many cases are of the utmost importance. When they are introduced in evidence they are in the custody of the court, and should be delivered to the official court reporter, not to be taken without leave of court, until attached to a bill of exceptions, or to be safely kept until the time for taking an appeal has expired. It is essential to the proper administration of justice that such exhibits be kept in the control of the court, and that they are not subject to be interfered with by other persons, especially where such a grave penalty as death or life imprisonment may be inflicted upon the accused person.

We have, then, this condition of the record as to the guns and bullets. The testimony of Bessie Rosenthal is that she only glanced at her husband's gun, and it was 32-caliber, so far as she knew. The testimony of police officer Franks as to the gun taken from Cottrell is that it is 38-caliber. The testimony of the doctor is that in his judgment the fatal bullet is 32-caliber, and the testimony of I. J. Dunn is that the caliber of exhibit 7, which was

Sawyer v. Sovereign Camp, W. O. W.

taken from the counter, is 32. As we have said, neither of the accused testified; the only evidence offered in their behalf being as to character. There is no positive testimony to show that both men had only one gun. There was ample opportunity to dispose of another before they were arrested. It is not improbable that men engaged in robbery would both be armed. There is no definite testimony as to which of the accused shot when in the store, except a statement by Carroll that he fired a shot accidentally. Jake fired five shots. Several must have been fired by the accused. There is no proof as to the number of shots that were fired from the pistol found in Cottrell's room, and only one discharged bullet is here of a larger size than 32-caliber. Even that is not identified. The testimony of Jake Rosenthal and William Laux is that a shot was fired by one of the accused before Jake took his gun from the desk, and the testimony of Bessie is positive that she heard a shot and saw the deceased collapse and fall before she screamed to Jake to get his gun, and before he fired. The jury, at the request of the accused, were permitted to view the scene of the tragedy under proper precautions. Under all of the testimony in the case, and considering the advantage the jury had of seeing the store and the places where the bullets were fired, and of weighing and applying the testimony in connection with this view, we believe we would not be justified in setting aside the verdict.

AFFIRMED.